AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 28 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Five cell phones
in the possession of United States Border Patrol

) Case No. 20MJ0910
)
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A, incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See attached Affidavit of Julio Martinez, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Julio Martinez, BPA-Intelligence
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/28/20

City and state: San Diego, CA

_____
Judge's signature
Michael S. Berg, Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH OF:<br><br>Model: Black Apple iPhone<br>IMEI: 357275098699132<br>Model: Silver Apple iPhone S<br>IMEI: 355723070446255<br>Model: Orange Nokia<br>IMEI: 354480092029152/3<br>Model: Black Samsung<br>IMEI: 352475/10/335038/3<br>Model: Black Alcatel Smart Phone<br>IMEI: 0151526003615289 | **AFFIDAVIT OF JULIO MARTINEZ IN SUPPORT OF SEARCH WARRANT** |

## AFFIDAVIT

I, Julio Martinez, Border Patrol Agent-Intelligence ("BPA-I") with the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, having been duly sworn, depose and state as follows:

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien-smuggling investigation conducted by U.S. Border Patrol ("USBP") Agents for five cellular telephones seized on February 19, 2020 from Cesar Sebastian URIBE. The cellular telephones include: (1) a black Apple iPhone (IMEI: 357275098699132); (2) a silver Apple iPhone S (IMEI 355723070446255); (3) an orange Nokia (IMEI: 354480092029152/3); (4) a black Samsung (IMEI: 0151526003615289); and (5) a black Alcatel smart phone (IMEI: 0151526003615289) (collectively, **"Target Telephones"**), as described in Attachment A.

2. URIBE is being investigated for violations of 8 U.S.C. § 1324 in the Southern District of California. The **Target Telephones** were seized from URIBE after he was served with a federal arrest warrant (19CR4089-DMS) at his current place of

residency. Probable cause exists to believe that the **Target Telephones** contains evidence relating to those violations. Specifically, it is believed that the **Target Telephones** were used by URIBE to communicate with co-conspirators during numerous alien-smuggling events from 2016 to present. The specified telephones are currently in the possession of the Customs and Border Protection Asset Forfeiture Office, 3752 Beyer Blvd. Bldg. 24, San Diego, California 92173.

3. Based upon my experience and training and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the items to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of alien smuggling or conspiracy to smuggle aliens in violation of 8 U.S.C. § 1324; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use as, or which is or has been used as, a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

4. I am a BPA-I within the United States Department of Homeland Security, Customs and Border Protection, USBP. I have been employed as a USBP agent since 2009. I am presently assigned to the San Diego Sector Intelligence Unit at the Campo Border Patrol Station. I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have received training, and have experience in, investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. Prior to my appointment at the Campo Border Patrol Station, my duty location was the San Diego Sector, where I was assigned to the Border Intelligence Center under the San Diego Intelligence Unit.

5. I am currently assigned to conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien-smuggling-related investigations, many of which involved the arrest of persons for alien smuggling

2

offenses. In those cases, I conducted interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge of and insight into the activities and operations of alien smugglers.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence, including cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

7. In preparing this affidavit, I have conferred with other agents and law-enforcement personnel who are experienced in the area of alien-smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a BPA-I consultations with law enforcement officers experienced in alien-smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls and text, web, and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

c.  Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.  Alien smugglers will use cellular telephones to direct drivers to synchronize a drop-off and/or pick-up time for the smuggled aliens.

e.  Alien smugglers will use cellular telephones to notify or warn their accomplices of law-enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.  Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

g.  Alien smugglers will use GPS devises in remote areas to guide them to the location of the aliens to be smuggled, as well as to the final destination of the smuggled aliens.

**FACTS SUPPORTING PROBABLE CAUSE**

9.  On July 16, 2019, Campo Border Patrol agents arrested Yusuf Mohamed ALI as he attempted to smuggle three undocumented aliens. Investigation into that and other smugglings implicated a Tecate-based smuggling organization. The organization would arrange for drivers to pick up aliens after they climbed over the border fence and transport them to hotels in the Los Angeles area, where the aliens were held until "sponsors" paid a fee for their release. Agents learned that Cristian HIRALES-Morales (AKA "Cebolla") ran the smuggling organization; that Cesar Sebastian URIBE (AKA "Frank") managed U.S.-based operations; and that Marcos Julian ROMERO, Sergio Anthony SANTIVANEZ, and other coordinators worked for URIBE. Agents also learned that the smugglers, including URIBE, would use their phones to communicate about smuggling arrangements. In case 19CR4089-DMS, the government charged HIRALES, ROMERO, and SANTIVANEZ with violations of 18 U.S.C. § 1324. On

4

February 13, 2020, the grand jury returned a superseding indictment adding URIBE as a defendant and agents obtained a warrant for his arrest.

10. At around 6:05 a.m. on February 19, 2020, San Diego Sector Border Patrol Agents executed the arrest warrant on Cesar Sebastian URIBE at URIBE's home, which is located at 1423 Graves Ave #226 in El Cajon, California. After detaining URIBE, agents sought and obtained written consent from both URIBE and his roommate Rimon Francis SLEW to search the home. During the search, SLEW led agents to packages of drugs in his closet, which he described as "coke."

11. Around 7:16 a.m., BPA-I Benjamin Moretti read URIBE his Miranda rights. URIBE said he understood his rights and agreed to speak with agents. URIBE was asked if he would grant agents consent to search his room, and he agreed. URIBE was escorted back to his room in order to change into appropriate travel clothes and for agents to search his room. While URIBE was searching for clothes to change into, BPA-I Moretti found five cellular phones. URIBE claimed the phones were his. All five cellular phones were seized.

12. URIBE was transported to the Campo Border Patrol Station located in Pine Valley, California. At around 12:45 p.m., after again reviewing and waiving his *Miranda* rights, URIBE provided a videotaped statement to BPA-I Benjamin Moretti and BPA-I Daniel Scott. During the interview, he stated the following: A friend from high school named Eloy REYNAGA Hirales introduced him to the HIRALES family, which was involved in smuggling activities. (REYNAGA is a documented alien and narcotics smuggler.) REYNAGA introduced URIBE to Cristian HIRALES. URIBE began working with HIRALES smuggling aliens in 2016. HIRALES recruits the aliens to be smuggled and arranges the smuggling fees (usually $8,000 to $9,000 per alien). The aliens' families in the United States usually pay upon the aliens' successful delivery to the Los Angeles area. URIBE is responsible for the transportation of the aliens within the U.S. Among other things, he would arrange the "Ubers," or load drivers, to pick up the aliens near the border after they jumped the border fence. To communicate,

smugglers and coordinators commonly use WhatsApp. In particular, they use the live-location function of WhatsApp to keep track of the drivers. This acts as a security function so that drivers do not leave with the aliens and burn the coordinators. URIBE's statement were consistent with the statements of previously arrested co-conspirators, who also stated in post-*Miranda* interviews that they were in constant communication via cellular phone with URIBE.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that URIBE used the **Target Telephones** found in his residence to facilitate the bringing in, transportation of, and "buyouts" of aliens in violation of 8 U.S.C. § 1324. Especially in light of URIBE's role arranging transportation for a larger organization, I believe that information relevant to the alien smuggling activities of URIBE and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the cellular telephones described herein.

## **SEARCH PROTOCOL**

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard

drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the devices, identify whether they are protected by a personal identification number (PIN), determine or circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant from the device. The search of the devices or of an image on the data on the device will be limited to identifying and seizing data subject to seizure pursuant to this warrant and, in any event, will be limited to only the information to be found on basic cellular telephones: digital, cellular, and/or telephone numbers and/or direct connect numbers assigned to the device; call and direct connect history information; list of contacts stored on the device; text messages stored

7

on the device; and, if equipped as a camera, photographs and videos stored on the device. In the event that I or other personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant, such information will not be used in any way unless a new warrant is obtained to search for such information.

18.   I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

## CONCLUSION

19.   Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that URIBE used the **Target Telephones** to facilitate alien smuggling by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324.

20.   I also believe that probable cause exists to indicate that evidence, fruits, and instrumentalities of illegal activity committed by URIBE continues to exist on the **Target Telephones.**

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

21. Based upon my experience and training, consultation with other agents in alien-smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a USBP agent, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

22. I swear the foregoing is true and correct to the best of my knowledge and belief.

Julio Martinez
Border Patrol Agent-Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS 28th DAY OF February, 2020.

HONORABLE MICHAEL S. BERG
United States Magistrate Judge

ATTACHMENT A

The following items ("**Target Telephones**") are to be searched:

(1)　Apple iPhone (Black)
　　　IMEI: 357275098699132

(2)　Apple iPhone S (Silver)
　　　IMEI: 355723070446255

(3)　Nokia Cellular Telephone (Orange)
　　　IMEI: 354480092029152/3

(4)　Samsung Cellular Telephone (Black)
　　　IMEI: 352475/10/335038/3

(5)　Alcatel Smart Phone (Black)
　　　IMEI: 0151526003615289

These items are currently in the possession of the Customs and Border Protection Asset Forfeiture Office, 3752 Beyer Blvd. Bldg. 24, San Diego, California 92173.

ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the **Target Telephones** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the **Target Telephones** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephones** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019 to February 19, 2020:

a. tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

b. tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses, load houses, or delivery points;

e. tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens with in the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Telephones**; or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, record, or data above.

**which are evidence of violations of 8 U.S.C. § 1324 (Alien Smuggling).**